WILLIAMS v. GARDNER. (No. 8170.)

(Court of Civil Appeals of Texas. Dallas. Nov. 8, 1919.)

1. EVIDENCE ⬅471(35)—CONCLUSION OF WITNESS.

It was error to overrule an objection, where plaintiff was asked by his counsel to state "how much he had been damaged by reason of the fact that he had been deprived of the place in controversy in this suit for the use to which he was putting it"; such question calling for a conclusion of the witness.

2. APPEAL AND ERROR ⬅1048(5)—HARMLESS ERROR IN ADMISSION OF EVIDENCE.

Error in overruling objection to a question calling for a conclusion of the witness was not reversible error, where the witness, in answering, stated the facts upon which he based his conclusion.

3. LANDLORD AND TENANT ⬅331(2)—LEASE ON SHARES; MEASURE OF DAMAGES FOR BREACH.

The measure of damages for the breach of a contract leasing or renting land on shares is the value of the injured party's share of the crops which he could have made, less proper deductions, to be determined by the circumstances of each particular case.

4. DAMAGES ⬅20, 22—NATURAL AND PROBABLE CONSEQUENCES.

A wrongdoer is responsible for the natural and probable consequences of his wrongful act or omission, whether in contract or in tort.

5. DAMAGES ⬅184—CERTAINTY OF PROOF.

Damages must be established with reasonable certainty; absolute certainty not being required.

6. DAMAGES ⬅184 — CIRCUMSTANTIAL EVIDENCE.

It is not essential in all cases that the amount of damages be shown by direct evidence.

7. LANDLORD AND TENANT ⬅331(6)—LEASE ON SHARES; EVIDENCE OF DAMAGE FROM BREACH.

In an action for damages for breach of a contract leasing land to plaintiff on shares, it was competent for plaintiff to show, for the purpose of ascertaining the damages occasioned by the breach, the character and amount of crops raised on the land during previous years it had been cultivated by the plaintiff.

8. EVIDENCE ⬅117—PRELIMINARY EVIDENCE TO SHOW MATERIALITY OF TESTIMONY.

In an action for breach of contract to lease land for a certain year, evidence as to the amount of crops raised on the land during previous years, when cultivated by plaintiff, was immaterial and not pertinent, in the absence of proof of the terms upon which plaintiff rented the premises for the year in question.

9. TRIAL ⬅252(20)—INSTRUCTIONS ON DAMAGES NOT BASED ON EVIDENCE.

In an action for damages for breach of a contract of lease, it was error to instruct that plaintiff was entitled, as damages, to the reasonable market value of two-thirds of the grain and three-fourths of the cotton which plaintiff would in reasonable probability have grown on the land, where there was no evidence as to whether plaintiff was to pay money rent or a part of the crops, and no evidence showing the kind of crops the plaintiff expected to plant and grow on the land during such year, or the price or value of farm products during the year.

10. DAMAGES ⬅62(4)—DUTY TO LESSEN DAMAGE FROM WRONGFUL EVICTION.

One evicted from farm land was not required to take any steps to lessen the damage he might sustain by eviction until actually evicted, and was not required on receiving notice from landlord that he could not occupy the land to. attempt to lease other premises.

11. LANDLORD AND' TENANT ⬅180(4) — WRONGFUL EVICTION; EXPENSES INCURRED AS DAMAGES.

One wrongfully evicted was not entitled to damages for expense of moving property from road, where it was thrown by officers executing a writ of sequestration, where defendant, through such officers, offered without expense to plaintiff to take the property to place, where plaintiff afterwards carried it at his own expense.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

12. FIXTURES 🔑14—DAMAGES ON EVICTION FOR PERMANENT IMPROVEMENTS BY TENANT.

One wrongfully evicted is not entitled to recover damages by reason of improvements, which were fixtures of permanent character, and not shown to have been made with the consent of the landlord, or with the understanding that they might be removed from the premises at the expiration of the tenancy.

Appeal from District Court, Ellis County; F. L. Hawkins, Judge.

Suit by Mrs. Margery Williams, executrix of the estate of Joe P. Williams, deceased, against J. S. Gardner. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Supple & Harding and Will Hancock, all of Waxahachie, for appellant.

J. T. Spencer and Tom Ball, both of Waxahachie, for appellee.

TALBOT, J. Appellant, as the executrix of the estate of Joe P. Williams, deceased, filed this suit in the district court of Ellis county, in form of trespass to try title, against the appellee for the possession of 94 acres of land, which is fully described in the petition. A writ of sequestration was also sued out and appellee having failed to replevy, he was ejected from the premises. Appellee answered that he had rented the land from appellant for the year 1917; that the sequestration was wrongfully and maliciously sued out; that his ejection from the land was wrongful and malicious—and reconvened for damages for loss of the use of the premises for farming purposes and as a home for the year 1917, in the sum of $2,000; for some fixtures and property which he claimed to have put on the land and the removal of which was denied to him, of the value of $149.45; and for expense of removing some of his household goods to another home, in the sum of $20. Several other items of damage were set up; but, as nothing was recovered on them, they need not be stated.

A trial was had on March 4, 1918, and on special issues the jury found for appellee $1,084 for loss of the use of the land, $20 for expense incurred in moving household goods, and $75 for value of improvements placed on the land by appellant. The year 1917 having expired when the case was tried, no claim was made by appellee to the premises or possession thereof, and the same was awarded to appellant as executrix of her deceased husband's estate.

[1, 2] The first assignment of error complains of the admission of certain testimony. The bill of exceptions in support of this assignment shows that the defendant, J. S. Gardner, was asked by his counsel to state—

"how much he had been damaged by reason of the fact that he had been deprived of the place in controversy in this suit for the use to which he was putting it; that appellant objected to the question, and the answer thereto, because it was not the correct way to prove the measure of defendant's damages, but only called for the conclusion of the witness, and that the court overruled the objection and permitted the witness to say that he had been damaged thereby $2,000."

Clearly the question and answer, as shown by the bill of exceptions, were inadmissible on the ground urged. But the record discloses that in connection with the testimony objected to, and as a part of witness' statement upon the subject, he said:

"That place was of value as a farming place, for farming purposes, the purposes for which I used it. I do not know what its value as a farming place was for 1917, but I know what it was worth in 1916, and what it was worth for the previous years, and I know what the place would produce a year. * * * I state that I had been on the place about six years. In 1916, the last year I was there, I made 24 bales of cotton. * * * I do not remember how many bales of cotton I made in 1913. I believe I made 38 bales of cotton in the year 1915. I made 44 bales of cotton there in 1914. For the 1916 rent I paid Mr. Williams $897 odd, and my part of the crop for 1916 was something over $2,400. For the year 1915, I paid Mr. Williams as rent in money for the place something over $700, and my part of the crop was $2,100. This is what the farm was reasonably likely to produce a year. I should think I was damaged about $2,000 by reason of being deprived of the use of that place—$2,000 as actual damages."

With the witness' statement of the facts upon which his conclusion was evidently based, we are inclined to think the admission of the testimony objected to does not constitute reversible error.

The second assignment of error presents practically the same question as the first, and is disposed of by what we have already said.

The third assignment of error is that the court—

"erred in allowing the defendant to prove the amount of products and the value thereof that he made upon the land in controversy during the years 1916, 1915, 1914, and 1913, because the measure of damages for being deprived of the farm was what the defendant was reasonably expected to make during the year 1917, and not what he made in former years, which proof was made over the objection of the plaintiff as shown by her bill of exception No. 6."

The appellee alleged in his cross-action that he "entered into a verbal contract with the plaintiff for the rental of the land and premises described in plaintiff's petition for the year 1917, said rental contract to begin January 1, 1917, and to terminate December

31, 1917, and as consideration for the said premises the defendant agreed and promised to pay plaintiff one-third of all grain and one-fourth of all cotton to be raised on said premises during the year 1917"; that by virtue of said contract, and for the purpose of carrying out its terms, defendant, on the 1st day of January, 1917, went upon the land, began its occupation and cultivation in compliance with said contract, and continued so to do until dispossessed of by plaintiff.

[3-8] While there has been some conflict in decisions of our Courts of Civil Appeals upon the subject, it is now settled that the measure of damages for the breach of a contract leasing or renting land on shares is the value of the injured party's share of the crops which he could have made, less proper deductions to be determined by the circumstances of each particular case. Rogers v. McGuffey, 96 Tex. 565, 74 S. W. 753. In Railway Co. v. Dale, 76 Pa. 47, it was held that the profits of a business, when the past earnings of the business are shown, can be estimated with sufficient certainty to be recovered as damages. This case was cited in Brincefield v. Allen, 25 Tex. Civ. App. 258, 60 S. W. 1010. A case similar to the one under consideration, and in that case the Court of Civil Appeals for the First District, held, in effect, that the amount of produce that might be raised per acre upon a farm where the same kind of crop had been previously raised upon said farm, and its productiveness thus tested, is susceptible of as definite ascertainment as the probable earnings of a business, and the market value of such produce when so raised could be ascertained with equal certainty. The court further held in that case that to deny the plaintiff the right to show the probable amount and value of the crop which could have been raised under ordinary conditions on the premises leased by him during the unexpired term of the lease, for the purpose of measuring the damages sustained by him by the breach of the contract, is to practically deny him the right to recover damages for the injury done him, because there was no other rule for measuring his damages under which he could receive fair compensation for the injury done him by the breach of the contract. It is a plain general rule that a wrongdoer is responsible for the natural and probable consequences of his wrongful act or omission, and this rule applies both in contract and in tort; and in cases admitting of such proof the amount of damages must be established with reasonable certainty. Such degree of certainty, however, is sufficient. Absolute certainty is not required. It is not necessary that profits should be susceptible of exact calculation; it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness. Corpus Juris, vol. 17, §§ 75, 112. Nor is it essential in all cases that the amount of damages be shown by direct evidence. Corpus Juris, vol. 17, § 91.

Upon proper predicate the appellee, Gardner, would have been entitled to show what crops he would probably have produced on the land in controversy during the year 1917, and the value thereof; and, as data from which such facts might be ascertained with reasonable certainty, we think it would be competent to show the character and amount of the crops raised on said land during the previous years the same had been cultivated by the appellee. But in the condition of the record now before us we are unable to see upon what ground appellee was entitled to make this proof. As has been seen, he alleged an express contract with the appellant, by the terms of which he agreed to pay her for the use and occupancy of the land one-third of the grain and one-fourth of the cotton to be grown thereon during the year 1917; but there is absolutely no evidence in the record to sustain these allegations. There is evidence to the effect that appellee rented the land from appellant for the year 1917, but none whatever showing what he agreed to pay for the use and occupancy of the land during that year, or that he agreed to pay her anything, either in money or a part of the crops, in consideration thereof. In the absence of proof that appellee rented the premises from appellant upon the terms alleged—that is, for one-third of the grain and one-fourth of the cotton to be raised thereon during the year 1917—we fail to see the pertinency of the evidence, the admission of which is complained of in the assignment of error under consideration.

[9, 10] The first issue submitted to the jury by the court was:

"Did the defendant, J. S. Gardner, on May 22, 1916, rent the land in controversy from the plaintiff, Mrs. Margery Williams, for the year 1917?"

And in connection with said issue he instructed the jury, among other things, to the effect that if they should give affirmative answer to that question, and should find that appellee sustained damages as a result of being dispossessed of the land, to allow him such sum as they found from the evidence to be the reasonable market value of two-thirds of the grain and three-fourths of the cotton which appellee would in reasonable probability have grown on said land during the year 1917. This charge, in due time, was objected to by the appellant on the grounds, among others, that there was no evidence showing what proportion of the crops the appellee should receive under the rental contract, nor was there any testimony showing the price or value of any products that might have been grown upon said

premises during the year 1917. This claim of the appellant is supported by the record, and the charge objected to should not have been given. The charge was an attempt to follow the alleged rental contract, but as indicated in discussing the foregoing assignment of error the only evidence of said contract is the statement of appellee and his son to the effect that appellee on the 22d day of May, 1916, rented the land in controversy from appellant. Whether appellee agreed to pay money rent, or a part of the crops to be grown on the land for its use and occupancy, does not appear. Nor was there any testimony whatever showing the kind of crops the appellee expected to plant and grow on the land during the year 1917, or the price or value of any kind of farm products during said year. In other words, there was no basis in the evidence for the charge, and the giving of it was necessarily prejudicial to appellant. The contention that the charge was erroneous, because it only made it the duty of appellee to attempt to lease other premises after he had been dispossessed under the writ of sequestration sued out by the appellant, instead of from the date he was notified by appellant that he could not occupy the land during the year 1917, which was on August 16, 1916, is not sound. The appellee contended that he had rented the land from appellant for the year 1917, and was not required to take any steps to lessen the damage he might sustain by an eviction until actually evicted.

For substantially the same reasons that the trial court erred in not sustaining the appellant's objections to the charge on the measure of damages, as outlined above, he erred in overruling the first ground of appellant's motion to set aside the finding of the jury that appellee was damaged $1,084, as a consequence of being dispossessed of the land in controversy, and which is complained of in appellant's ninth assignment of error.

[11] The trial court erred in refusing to set aside, as requested by appellant, the finding of the jury that appellee had sustained damages in the sum of $20 for expenses incurred in removing his property from the public road, where the officers executing the writ of sequestration left it, to the town of Italy, because it appeared from the evidence without contradiction, as we understand it, that such item of damage was caused by the willful refusal of the appellee to permit appellant, through said officers, to carry said property, without expense to appellee, and deposit it in some safe place in said town, and afterwards had the property carried to said town at his own expense.

[12] We are further of the opinion that the court erred in refusing to set aside as requested by appellant, the verdict of the jury assessing damages against the appel-lant in the sum of $75 for certain improvements claimed by appellant to have been made on the land in question by him, and which he was not permitted to remove. This was error, because there was no testimony, in our opinion, to show that appellee had any legal right to remove any of the material out of which such improvements were constructed, unless it was a small and insignificant item of wire placed around a hog lot. It appears that the improvements in question were fixtures of a permanent character, and the testimony was insufficient to show that they were made with the consent of the landlord, and with the understanding that they might be removed from the premises at the expiration of the tenancy.

For the reasons indicated, the judgment of the court below is reversed, and the cause remanded.